IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELVIRA PEREZ

VS                                    Case #

DOROTHY ALANA FINK , MD  in her
official capacity as ACTING
SECRETARY OF HEALTH AND
HUMAN SERVICES ;
MICHELLE KING ,
in her official capacity as
COMMISSIONER FOR SOCIAL
SECURITY  ; EUNICE MEDINA ,
in her official capacity
as interim Director Of the South Carolina
Department of Health and Human Services;
EMILY ZALKOVSKY , in her official capacity
as director for the Texas Health and Human
Services Commission.
 and   DAVID J COLE , MD
in his official capacity as President of the
The Medical University
of South Carolina

Case: 1:25−cv−00404
Assigned To : Unassigned
Assign. Date : 2/10/2025
Description: Pro Se Gen. Civ. (F−DECK)

_____/

# EMERGENCY COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

Elvira Perez is a 95 year old Hispanic female who has been previously

diagnosed with blindness, Dementia, senility , Hypertension and  Diabetes. She has

been  a Social Security and Medicare Parts A and B recipient since , at least , 1971.

1

**RECEIVED**

FEB 10 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

According to the Aiken Rehabilitation and Nursing Home she fell on December 28th, 2024 and injured her right shoulder. A subsequent CAT Scan imaging shows a dislocated shoulder, and a Glenoid Fracture. Orthopedic Surgeons state that the her rotator cuff is torn so they have concluded that she needs surgical intervention.

But medical care has been denied because Defendant Medicare cancelled "Part A Coverage" purportedly because either Social Security or South Carolina Medicaid are not paying the premiums. The Medicare agent also informed Mr. Perez that Texas Medicaid has a case open on Mrs. Perez and could be siphoning off funds from Mrs. Perez' account.

Assuming, arguendo, that it was true that Mrs. Perez had no Medicare Part A Coverage, MUSC was legally required pursuant to EMTALA, 42 CFR 489.24, ET SEQ to stabilize her shoulder or transfer her to another hospital which was qualified to do so. MUSC failed or refused to do so.

I

**ELVIRA PEREZ'
MEDICARE PART A COVERAGE HAS BEEN ARBITRARILY,
CAPRICIOUSLY AND WHIMSICALLY CANCELLED BY DEFENDANTS
SOCIAL SECURITY, MEDICARE AND SOUTH CAROLINA MEDICAID**

1- On or about January 1st, 2025 Jose A. Perez[1], Ms Elvira Perez' only son was told by the nursing staff at the Aiken Rehabilitation Nursing Home that Ms. Perez fell on December 28th, 2024 .and injured her right shoulder. Mrs. Perez was never taken to the emergency room.

2- Jose A. Perez, Mrs. Perez' son took Mrs. Perez to the Aiken Regional Medical Center. She was diagnosed as having a dislocated right shoulder. The shoulder was allegedly repositioned and Mrs. Perez was sent back to the Aiken Rehabilitation Nursing Home.

3- Nevertheless Mrs. Perez continued to scream in pain and refused to move her right arm.

4- For that reason, Her son, Mr. Perez had Mrs. Perez transferred to the Piedmont Hospital in Augusta Georgia. There the shoulder was again repositioned. But a subsequent CT Scan of her shoulder was performed which showed a glenoid fracture of the shoulder.

5- This is a fracture of a part of the shoulder blade called the "glenoid." [2]This is the socket that holds the head of the humerus (the bone of the upper arm**). A**

---

[1] Jose A. Perez is Mrs. Elvira Perez only son and her power of attorney. He is proceeding as Next Friend pursuant to Whitmore v. Arkansas, 495 U.S. 149, 165 (1990)

[2] https://www.wkhs.com/health-resources/wk-health-library/disease-condition-information/a-z/fracture-of-the-shoulder-socket-(glenoid-fracture)#:~:text=This%20is%20a%20fracture%20of,slip%20out%20of%20the%20socket

3

**glenoid fracture can allow the head of the humerus to slip out of the socket**[3].

6- The Orthopedic Doctor at Piedmont Hospital informed Mr. Perez on January 22nd, 2025 that in order to properly stabilized and correct Ms. Perez' shoulder dislocation and fracture surgery was necessary. But Mr. Perez was told that Piedmont Hospital was not in Mrs. Perez' Medicaid network,

7- Subsequently, Mr. Perez made an appointment with the Medical University of South Carolina – Orangeburg Campus (MUSC). The orthopedist surgeon there told Mr. Perez that in order to correct the deformity surgery was necessary. He also indicated that the Mrs. Perez' physical exam revealed that her rotator cuff was torn. A rotator cuff tear is an injury to the group of four tendons that surround and stabilize the shoulder joint[4].

8- But, later on that day the the Surgeon told Mr. Perez that he changed his mind, that Mr. Perez should take Mrs. Perez to the ER where the ER doctor would relocate the shoulder, the glenoid fracture and rotator cuff tears notwithstanding. Mr. Perez objected. The Orthopedist Surgeon then stated that he would relocate the shoulder but would not perform surgery

---

[3] Ibid

[4] https://orthoinfo.aaos.org/en/diseases--conditions/rotator-cuff-tears/

and that there was the very distinct possibility that her shoulder would dislocate again.

9- While at MUSC a Chest X Ray showed that Mrs. Perez trachea was deviated. The Hospitalist assigned to Mrs. Perez refused to evaluate the tracheal deviation and decided to send Mrs. Perez back to the nursing home.

10- Mr. Perez asked to speak to speak to the Case Manager at MUSC in order to Appeal the decision to discharge Mrs. Perez . The case manager refused to meet or call him.

11- Mr. Perez subsequently called Acentra Health QIO to appeal Mrs. Perez' discharge from the Hospital – she was assigned Case Number 20250206_932_EP.

12- Acentra Health told Mr. Perez that MUSC never admitted Mrs. Perez to the Hospital – that she was admitted under "observation status" therefore Acentra had no jurisdiction over the appeal, The agent told Mr. Perez that he had to call Medicare Directly ,

13- Mr. Perez called Medicare . **The agent told Mr. Perez that the reason Mrs. Perez was not admitted to MUSC was because Mrs Perez' Medicare Part A coverage was surreptiously cancelled in 2019 due to non-payment of premiums.**

14-    The Agent also told Mr. Perez that Social Security had failed to update their records to show that Ms. Perez was now living in South Carolina. He also told Mr. Perez that it was social security's responsibility to pay Part A Premiums.

15-    The Medicare agent also informed Mr. Perez that Texas Medicaid has a case open on Mrs. Perez and could be siphoning off funds from Mrs. Perez.

16-    Mr. Perez contacted the Social Security office at 115 Robert C Daniel Jr Parkway, Augusta, Ga,30909. He was informed that Social Security records were correct and that it was South Carolina Medicaid's responsibility to Pay the Premiums for Part A.

17-    Mr. Perez called South Carolina Medicaid. They informed him that they were only responsible for Part B Premiums.

18-    Texas Medicaid agents told Mr. Perez that they had to review her records and that a social worker would call Mr. Perez back. No one from Texas Medicaid has called Mr. Perez back.

## II

### DEFENDANT MUSC FAILED OR REFUSED TO (a) STABILIZE MS PEREZ' SHOULDER AND (b) To TRANSFER HER TO A QUALIFIED MEDICAL FACILITY PURSUANT TO, INTER ALIA, 42 CFR 489.24 , ET SEQ

19-     As stated hereinabove MUSC knew that Mrs. Perez' shoulder had been unsuccessfully relocated twice. The medical staff at MUSC knew that the bone responsible for keeping her shoulder in place was fractured. The medical staff at MUSC knew that Mrs. Perez right rotator cuffs were torn. The MUSC Medical staff knew that refusing to stabilize Mrs. Perez right shoulder could cause the development of scar tissue which would, would permanently destroy the use of her right arm.

20-     Hospitals are prohibited from delaying screening examinations or further care "in order to inquire about the individual's method of payment or insurance status" Please see 42 USC 1395dd (1986).

21-     42 CFR 489.24 definitions

22-     *To stabilize* means, with respect to an "emergency medical condition" as defined in this section under paragraph (1) of that definition, **to provide such medical treatment of the condition necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result** from or occur during the transfer of the individual from a facility or that, with respect to an "emergency medical condition" as defined in this section under paragraph (2)

23-     *Stabilized* **means,** with respect to an "emergency medical condition" as defined in this section under paragraph (1) of that definition, that no

7

material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility

24- Paragraph (e) 2 required that Mrs. Perez be transferred to another hospital which could correct the condition . MUSC failed or refused to do so. They transferred her to a nursing home which could not treat her right shoulder.

### III

### MRS PEREZ RESPECTFULLY SUBMITS THAT DUE TO THE MEDICAL EMERGENCY WHICH IS THE BASIS OF HER COMPLAINT THAT SHE OUGHT NOT BE REQUIRED TO EXHAUNST ADMINISTRATIVE REMEDIES

25- As shown hereinabove Mrs. Perez is facing the distinct possibility of losing usage of her right arm if scar tissue develops at the site of the shoulder injury. Reason she respectfully begs the District Court not to require her to exhaust administrative remedies.

### IV

### JURISDICTION

26- The jurisdiction of the Court is respectfully invoked pursuant to 42 USC 1983 ; 28 U.S.C. §§ 1331, 1345; 42 USC 405 (g) and (H) , 42 USC 1383©(3) . Equitable relief is being sought pursuant to , inter alia, 42 U.S.C. § 1395dd(d)(2)(A). and 42 USC 1983.

# V

## CONCLUSION AND RELIEF SOUGHT

27-     Mrs. Perez respectfully seeks and Order compelling the responsible party to immediately restore Mrs. Perez Medicare Part A Coverage

28-     In the alternative, that MUSC be required to immediately re-admit her and perform the necessary shoulder surgery as required by, inter alia, EMTALA.

29-     Such further relief as the court deems just and proper.

Respectfully Submitted

_____
Jose A. Perez for
Elvira Perez
307 Lakeside Drive
North Augusta, SC 29841
347-552-2881